```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
U.S. BANK NATIONAL ASSOClATION,       :
as Trustee,                           :
              Interpleader Plaintiff, :
                                      :
                                      :
           -v-                        :
                                      :
                                      :
BLACK DIAMOND CLO 2005-1 ADVISER,     :
L.L.C.; METROPOLITAN LIFE INSURANCE   :
COMPANY; METLIFE REINSURANCE          :
COMPANY OF SOUTH CAROLINA; PRUDENTIAL :
FIXED INCOME; BDC FINANCE L.L.C.;     :
EMBASSY & CO., solely as Registered   :
owner of record for the benefit of    :
others of Notes under the Indenture;  :
HARE & CO., solely as registered      :
owner of record for the benefit of    :
others of Notes under the Indenture;  :
ENGINERIG & CO., solely as registered :
owner of record for the benefit of    :
others of Notes under the Indenture;  :
MORGAN STANLEY & CO. INCORPORATED,    :
solely as registered owner of record  :
for the benefit of others of Notes    :
under the Indenture; HOWARD L. TERRY; :
THE DEPOSITORY TRUST COMPANY, in its  :
own name or its nominee name CEDE &   :
CO., solely as registered owner of    :
record for the benefit of others of   :
Notes under the Indenture in its role :
as Depositary; BNP PARIBAS SECURITIES :
SERVICES, LUXEMBOURG BRANCH, solely   :
as registered owner of record for the :
benefit of others of Notes under the  :
Indenture in its role as Common       :
Depository; and DOES 1 through 100,   :
owners of beneficial interests in     :
Notes under the Indenture,            :
                                      :
              Interpleader Defendants.:
------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED : 12/30/11

11 Civ. 5675 (JSR)
OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

This is an interpleader action commenced by interpleader plaintiff U.S. Bank National Association ("U.S. Bank"). The suit arises out of a collateralized loan obligation ("CLO") transaction called Black Diamond CLO 2005-1, which closed on April 7, 2005. MetLife's Rule 56.1 Statement of Undisputed Material Facts ("MetLife 56.1") ¶ 1; Black Diamond's Rule 56.1 Statement of Undisputed Material Facts ("Black Diamond 56.1") ¶ 1. U.S. Bank, the trustee under an Indenture dated April 7, 2005 (the "Indenture"), commenced this action to resolve a dispute among various parties regarding the distribution of certain proceeds (the "Interpleader Funds") generated by the Portfolio Collateral and held by U.S. Bank. The dispute is primarily between the Black Diamond Interpleader Defendants (the "Black Diamond Claimants")[1] and the Met Life Interpleader Defendants (the "MetLife Claimants").[2]

The Collateral Manager, Black Diamond CLO 2005-1 Adviser, L.L.C., made commitments for certain reinvestment trades (the "Unsettled Commitments") during the permissible Reinvestment Period for the transaction, but did not receive the funds to pay for those trades until the Reinvestment Period had ended. The MetLife Claimants as Noteholders of notes issued pursuant to the Indenture, bring a motion for summary judgment asserting that the Unsettled Commitments cannot be finalized and that the Interpleader Funds must

---

[1] The Black Diamond Claimants are Black Diamond CLO 2005-1 Adviser, LLC. and BDC Finance, LLC.
[2] The MetLife Interpleader Defendants are Metropolitan Life Insurance Company, MetLife Reinsurance Company of South Carolina, and The Prudential Insurance Company of America.

be distributed to the Noteholders.[3] The Black Diamond Claimants oppose the motion for summary judgment and bring a motion for judgment on the pleadings; they claim that the Interpleader Funds should be used to settle the Unsettled Commitments.[4] The parties acknowledged at oral argument that the motions can be considered together because the Court's decision on one motion will resolve most, if not all, of the issues raised by the other motion.[5] See transcript of oral argument, 11/30/11 ("Tr.") at 2, 6. The Court finds that the MetLife Claimants' summary judgment motion must be granted because under the terms of the Indenture, the Interpleader Funds were not eligible for reinvestment and should have been distributed to the Noteholders. For the above reason, the Black

---

[3] "[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

[4] A court may grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of America, 47 F.3d 14, 16 (2d Cir. 1994). In deciding a motion for judgment on the pleadings, a court may consider, *inter alia*, (i) the pleadings, (ii) exhibits or documents attached to the pleadings or incorporated therein by reference and (iii) matters subject to judicial notice. See VCG Special Opportunities Master Fund Ltd v. Citibank N.A., 594 F. Supp. 2d 334 (S.D.N.Y. 2008). In deciding a motion for judgment on the pleadings, the Court applies the "same standard as that applicable to a motion under Rule 12(b)(6) . . . accept[ing] the allegations contained in the complaint as true, and draw[ing] all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).

[5] The only issues that do not overlap are the factual issues that the MetLife Claimants argue preclude the Court from granting the Black Diamond Claimants' motion for judgment on the pleadings. As discussed below, the Court need not reach those factual issues because of its ruling on the primary issues in dispute.

Diamond Claimants' motion for judgment on the pleadings must be denied.[6]

It is first necessary to provide some brief background. The Collateral Manager supervises and directs the investment and reinvestment of the Portfolio Collateral on behalf of the Issuer in accordance with the Indenture in exchange for fees paid by the Issuer. MetLife 56.1 ¶¶ 10-11; Black Diamond 56.1 ¶¶ 10-11. The funds payable to the Collateral Manager are calculated as a percentage of the total Portfolio Collateral, see Indenture § 1.1; therefore, an increase in the amount of Portfolio Collateral results in an increase in the fees payable to the Collateral Manager. Defendant BDC Finance L.L.C. is the beneficial owner of Income Notes issued by the Issuer; these notes are junior to the Notes held by the MetLife Claimants and are not secured by the Payment Collateral. MetLife 56.1 ¶¶ 13-15; Black Diamond 56.1 ¶¶ 13-15.

The MetLife Claimants are the beneficial owners of Class A Notes and Class B Notes issued by the Issuer pursuant to the Indenture. Met Life 56.1 ¶ 6; Black Diamond 56.1 ¶ 6. The Class A Notes and Class B Notes are the two most senior classes of Notes that remain outstanding, and the Issuer's payment obligations on

---

[6] The MetLife Claimants and the Black Diamond Claimants are the only parties that have asserted an affirmative claim to the Interpleader Funds. The Trustee takes no position on the merits of the competing motions. Plaintiff's Brief with Respect to Competing Motions ("US Bank Mem.") at 1. Three other claimants answered the complaint. All three parties, the Deposit Trust Company (with its nominee Cede & Co.); Morgan Stanley & Co., Inc.; and Enginerig & Co. assert that the Complaint fails to state a claim against them. See Dkt. # 4, 27 49.

4

those Notes are secured by the Portfolio Collateral and the proceeds thereof. MetLife 56.1 ¶ 7; Black Diamond 56.1 ¶ 7.

Indentures, such as the one at issue in this case, are interpreted in accordance with traditional contract law principles. See, e.g., Jamie Sec. Co. v. Limited, Inc., 880 F.2d 1572, 1576 (2d Cir. 1989). Under New York law, the initial interpretation of a contract "is a matter of law for the court to decide." Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, 136 F.3d 82, 86 (2d Cir. 1998).

The Indenture creates three distinct time periods relevant to this case. The first, the "Initial Investment Period" began on the Closing Date. Indenture § 1.1 (definition of "Initial Investment Period"). During the Initial Investment Period, the Issuer used the proceeds from the sale of the Notes to purchase the Portfolio Collateral consisting of loans and other financial assets. MetLife 56.1 ¶ 23; Black Diamond 56.1 ¶ 23.

After the Initial Investment Period, the second phase of the transaction was the Reinvestment Period. Id. The Reinvestment Period ended on June 17, 2011. Indenture § 1.1; MetLife 56.1 ¶ 49; Black Diamond 56.1 ¶ 49. The Interpleader Funds consist of $65,434,642.57 in principal payments received on the Portfolio Collateral after June 17, 2011. MetLife 56.1 ¶ 50; Stipulated Facts ¶ 3. Between February 1, 2011 and June 17, 2011, the Collateral Manager entered into commitments to purchase additional Portfolio

5

Collateral; the Collateral Manager sought to use the Interpleader Funds to settle these Unsettled Commitments.

Because of the dispute between the MetLife Claimants and the Black Diamond Claimants, the Trustee placed the Interpleader Funds in an escrow account pending resolution of this action. U.S. Bank Mem. at 2. The Interpleader Funds were not used to settle the Unsettled Commitments, nor were they distributed to the Noteholders on the September 20th Payment Date. MetLife 56.1 ¶¶ 53-55; Black Diamond 56.1 ¶ 55. The purchase price of the remaining Unsettled Commitments is less than the $65,434,642.57 in Interpleader Funds. MetLife 56.1 ¶ 57; Black Diamond 56.1 ¶ 57.

The third period created by the Indenture is the period after the Reinvestment Period ends. As one would expect, after the Reinvestment Period ends, reinvestment is limited: only unscheduled principal payments or certain types of sale proceeds may be reinvested and only if certain stringent reinvestment criteria are met. Indenture §§ 11.1(a)(xix); 12.2(n). The parties agree 1) that the Interpleader Funds are not comprised of the limited type of funds eligible for reinvestment after the Reinvestment Period and 2) the reinvestment criteria for new investments after the Reinvestment Period were not satisfied. Tr. at 11. As discussed above, the parties also agree that the Unsettled Commitments were committed to before the Reinvestment Period ended. Therefore, the question is whether the Interpleader Funds can be used to settle the Unsettled Commitments made during the Reinvestment Period.

6

The Indenture is best understood by following the funds as they proceed through the accounts in the Indenture. The Indenture sets up a structured path for those funds to follow once they are received, and the path depends in significant part on when the funds were received.

Proceeds received on the Portfolio Collateral are first deposited into the "Collection Account." Indenture §§ 1.1 (definition of "Proceeds"); 10.2(a)-(b). Both parties agree that the Interpleader Funds properly went into the Collection Account after they were received. Met Life Claimants Memorandum of Law in Support of their Motion for Summary Judgment at 14 ("Met Life Mem."); Black Diamond Claimants' Reply Memorandum in Support of their Motion for Judgment on the Pleadings ("Black Diamond Reply Mem.") at 4-5.[7]

All monies in the Collection Account are subject to "disbursement and withdrawal as provided in" § 10.2 and § 10.3(c). See Indenture § 10.2(a). Sections 10.2 and 10.3(c), in relevant part, allow for transfer of funds to the Principal or Payment Accounts through procedures that will be discussed below. The Issuer and the Collateral Manager "shall not have any legal, equitable, or beneficial interest in the Collection Account other than in accordance with the Indenture." Id. § 10.2 (a)-(b). There

---

[7] Section 10.2(a) says that all Proceeds shall be placed in the Collection Account "unless simultaneously reinvested in Portfolio Collateral." Indenture § 10.2 at 171. Black Diamond does not argue that the Interpleader Funds were "simultaneously reinvested" in the Portfolio Collateral. As discussed above, the Black Diamond Claimants argue that the Interpleader Funds properly went into the Collection Account.

7

is no provision in the Indenture that allows reinvestment from the Collection Account after the Reinvestment Period.

In fact, reinvestment ordinarily occurs through the Principal Account. "All Principal Proceeds *received during the Reinvestment Period* [with exceptions not applicable here], which have not been reinvested in Substitute Portfolio Collateral by the Business Day following the receipt of such Principal Proceeds," must be transferred from the Collection Account to the Principal Account "not later than the Business Day following receipt of such Proceeds." Id. § 10.3(a) (emphasis added). Once in the Principal Account, the Issuer may direct the Securities Intermediary to "reinvest in Portfolio Collateral . . . any Principal Proceeds deposited in the Principal Account." Id. Any "Principal Proceeds *received during the Reinvestment Period* which are not reinvested in Portfolio Collateral" by the end of the next Due Period are transferred to the Payment Account for distribution according to the priority waterfall. Id. § 10.3(a) (emphasis added).

Section 10.3(a) does not allow for the transfer of funds from the Collection Account to the Principal Account if those funds were received after the Reinvestment Period. Therefore, both parties agree that the Interpleader Funds were not transferred to the Principal Account. Met Life Mem. at 8-9; Black Diamond Reply Mem. at 5.

On the business day preceding each Payment Date, the funds in the Collection Account are transferred to the Payment Account. Id.

8

§ 10.3(c). The Indenture states that the Trustee shall transfer, for application pursuant to Section 11.1(a), "any amounts then held in Cash" in the Collection Account, the Principal Account, and two other irrelevant accounts. Id. § 10.3(c). Withdrawals from the Payment Account are allowed only to pay the interest, principal or premium on the Notes, to cover any Administrative Expenses, or to make other payments in accordance with the priority waterfall. Id. § 10.3(c). Section 11.1(a) states that Principal Proceeds in the Payment Account are primarily used to pay the Noteholders. Id. § 11.1(a). Reinvestment from the Payment Account during the Reinvestment Period must meet the less stringent Reinvestment Criteria applicable during that period. Id. 11.1(a)(B)(xviii). Reinvestment from the Payment Account after the Reinvestment Period is only allowed in the limited circumstances described above. See id. §§ 11.1(a)(B)(xix); 12.2(n).

In sum, essentially all proceeds go to the Collection Account. Principal Proceeds received during the Reinvestment Period are transferred from the Collection Account to the Principal Account, from which reinvestment is allowed. Funds received after the Reinvestment Period are not transferred to the Principal Account for reinvestment. On the relevant Payment Dates, the cash in the Collection and Principal Accounts is transferred to the Payment Account. Reinvestment from the Payment Account is generally allowed during the Reinvestment Period, but is generally not allowed after the Reinvestment Period. Therefore, the Indenture has specific

9

provisions that allow for reinvestment of funds received during the Reinvestment Period. See id. §§ 10.3(a); 11.1(a)(B)(xviii). Those funds, if reinvested before the relevant Payment Date, are then excluded from the amount that must be paid to the Noteholders through the Priority Waterfall. See, e.g., id. § 1.1 (definition of Principal Proceeds). There is no provision that allows the Collateral Manager to reinvest scheduled principal payments received after the Reinvestment Period. The Black Diamond Claimants do not deny that there are specific provisions for reinvestment through the Principal Account and the Payment Account, and that the Interpleader Funds here are not eligible for reinvestment through either. Instead, they argue that the Interpleader Funds can be reinvested through the Collection Account, even though the provision governing the Collection Account does not provide for any such reinvestment. Id. § 10.2(a). The Court rejects this argument. Under the terms of the Indenture, the Interpleader Funds should have remained in the Collection Account until they were transferred to the Principal Account for distribution to the Noteholders.

The Black Diamond Claimants' primary argument in opposition to this interpretation of the Indenture is that the Priority of Payments provision says that it applies "[n]otwithstanding any other provision in the Indenture." Id. § 11.1(a); Tr. 4. Moreover, the Priority of Payments only pays out Interest Proceeds and Payment Proceeds. Indenture § 11.1(a). Both parties agree that the Interpleader Funds are not Interest Proceeds, and the Black Diamond

10

Claimants argue that the Interpleader Funds are not Principal Proceeds. If the Interpleader Funds are not Principal Proceeds, the Black Diamond Claimants argue that they would not be transferred to the Payment Account for distribution to the Noteholders. Assuming *arguendo* that this is true, the Court nonetheless rejects this interpretation of the Indenture because the Interpleader Funds are Principal Proceeds.

As the Black Diamond Claimants admit, its interpretation of the Indenture turns on a contention that the Interpleader Funds were not Principal Proceeds because they were "previously reinvested." Tr. 4. The Black Diamond Claimants' interpretation is not supported by the plain language of the Indenture. First, the Interpleader Funds could not have been reinvested, because as discussed above, there is no procedure for taking funds from the Collection Account that are received after the Reinvestment Period and reinvesting those funds in Portfolio Collateral. Therefore, the funds would have remained in the Collection Account until they were transferred to the Payment Account for distribution to the Noteholders.[8]

Second, even if it was possible to use scheduled principal payments received after the Reinvestment Period for reinvestment, the Interpleader Funds are not excluded from the definition of Principal Proceeds. With respect to any Payment Date, "Principal Proceeds" include:

---

[8] It is also worth noting that the Black Diamond Claimants can point to no provision of the Indenture that allows the Collateral Manager to commit to trades before receiving the funds to settle those trades.

11

> (i) all principal payments . . . received during the related Due Period on the Portfolio Collateral and Eligible Investments . . .; provided that any of the amounts referred to in clauses (i) through (viii) above will be excluded from Principal Proceeds to the extent such amounts were previously reinvested in Portfolio Collateral or designated by the Collateral Manager as retained for reinvestment in accordance with the Reinvestment Criteria . . .
>
> Indenture § 1.1 (definition of "Principal Proceeds").

As discussed above, it is undisputed that the Interpleader Funds consist of "principal payments." The Black Diamond Claimants argue that the funds were excluded from Principal Proceeds because they were previously reinvested when the Collateral Manager agreed to the trades. Tr. at 13.[9] But, according to the plain meaning of the word "reinvested," these funds could not have been reinvested, much less previously reinvested, *before they were received*. For example, according to the Cambridge Online Dictionary, to reinvest means to "put money *that you receive from an investment* back into that investment, or into another investment." Cambridge Online Dictionary, Cambridge University Press, 2011 (emphasis added). Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms[.]" UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc., 660 F.3d 643, 649 (2d Cir.

---

[9] In their brief, the Black Diamond Claimants argue that the Court should examine whether the funds were reinvested at the time of the Payment Date following their receipt. Black Diamond Reply Mem. at 9. But, as discussed above, they now concede that their argument relies on the funds being reinvested at the time the trades were committed to. This is a wise concession because the Black Diamond Claimants' theory of the case is that the reinvestment occurred during the Reinvestment Period because the funds were reinvested at the time the Collateral Manager committed to the trade. See, e.g., Tr. at 13.

2011) (quoting Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002)).

Therefore, as discussed at length above, the Interpleader Funds should have been sent to the Payment Account for distribution through the priority waterfall. This is consistent with the Offering Circular, which states that: "Principal payments received in respect of the Portfolio Collateral during the Reinvestment Period *may*, and principal payments [with exceptions not applicable here] received in respect of the Portfolio Collateral following the Reinvestment Period *will* be applied to payment of principal" on the Notes. Biron Ex. 8 (Offering Circular at ii) (emphasis added). The Offering Circular includes the same definition of Principal Proceeds as the Indenture, in other words excluding those proceeds which were previously reinvested. Id. at 58. Nonetheless, the Offering Circular concludes that *all* principal payments received after the Reinvestment Period *will* be distributed to the Noteholders. Id. at ii. That is because principal payments received after the Reinvestment Period are not eligible for reinvestment.

The Court need not reach the MetLife Claimants' additional arguments regarding the limited purpose behind the special purpose vehicle, because the plain text supports Met Life's interpretation.[10] The Court therefore grants MetLife's motion for summary judgment, denies the motion of the Black Diamond Claimants for judgment on the

---

[10] Moreover, the Court need not reach the additional factual issues that MetLife raises in opposition to the motion for judgment on the pleadings, because that motion is denied based on the plain language of the Indenture as analyzed above.

13

pleadings, and directs the Trustee to distribute all of the Interpleader Funds to the Noteholders, including the MetLife Claimants, in accordance with the Priority of Payments.[11]  The Court also dismisses Cede & Co., Enginerig & Co., and Morgan Stanley & Co., Inc. from the action because the Interpleader Complaint fails to state a claim against them.  The Clerk of the Court is hereby directed to enter final judgment and to close the case.

    SO ORDERED.

Dated: New York, NY  
December 30, 2011

                                            JED S. RAKOFF, U.S.D.J.

---

[11] The MetLife Claimants originally asked the Court to stay distribution of the $906,172.64 that was received during the Due Period for the December 20th Payment Date until the December 20th Payment Date.  MetLife Mem at 16.  Since that Date has passed, all of the Interpleader Funds should be distributed as discussed above.